TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
DOMINIQUE CAAMANO (Cal. Bar No. 301810)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0492
    Facsimile: (213) 894-0141
    E-mail:   dominique.caamano@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>         v.<br><br>NICHOLAS TULLOS,<br><br>      Defendant. | No. CR 20-258-JAK<br><br>PLEA AGREEMENT FOR DEFENDANT NICHOLAS TULLOS |

1.   This constitutes the plea agreement between NICHOLAS TULLOS ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

### DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

    a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Count Two of the indictment in United States v. Nicholas Tullos, CR No. 20-258-JAK,

which charges defendant with: knowingly and intentionally distributing N-phenyl-N-[1-(2-phenylethy)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

       b.   Not contest facts agreed to in this agreement.

       c.   Abide by all agreements regarding sentencing contained in this agreement.

       d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

       e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

       f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

       g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

       h.   Agree that all court appearances, including his change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of the Chief Judge 21-031 or another order, rule, or statute. Defendant understands that, under the United States Constitution, the United States Code, and the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), he may have the right to be physically present at these hearings. Defendant understands that right and, after

consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver.  Specifically, this agreement includes, but is not limited to, the following:

 i. Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

 ii. Defendant consents under Section 15002(b) of the CARES Act to proceed with his sentencing hearing by VTC or telephone, if VTC is not reasonably available.

 iii. Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

 iv. Not commit any crime or any act constituting obstruction of justice; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

THE USAO'S OBLIGATIONS

3. The USAO agrees to:

 a. Not contest facts agreed to in this agreement.

 b. Abide by all agreements regarding sentencing contained in this agreement.

 c. At the time of sentencing, move to dismiss the remaining count of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable

3

1  Sentencing Guidelines range, the propriety and extent of any
2  departure from that range, and the sentence to be imposed.

3          d.   At the time of sentencing, provided that defendant
4  demonstrates an acceptance of responsibility for the offense up to
5  and including the time of sentencing, recommend a two-level reduction
6  in the applicable Sentencing Guidelines offense level, pursuant to
7  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
8  additional one-level reduction if available under that section.

9          e.   Not seek a sentence of imprisonment above the high end
10 of the applicable Sentencing Guidelines range, provided that the
11 offense level used by the Court to determine that range is 10 or
12 higher and provided that the Court does not depart downward in
13 offense level or criminal history category.  For purposes of this
14 agreement, the high end of the Sentencing Guidelines range is that
15 defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A,
16 without regard to reductions in the term of imprisonment that may be
17 permissible through the substitution of community confinement or home
18 detention as a result of the offense level falling within Zone B or
19 Zone C of the Sentencing Table.

20                          NATURE OF THE OFFENSE

21      4.   Defendant understands that for defendant to be guilty of
22 the crime charged in Count Two, that is, distribution of fentanyl, in
23 violation of Title 21, United States Code, Sections 841(a)(1),
24 (b)(1)(C), the following must be true: (1) the defendant knowingly
25 distributed fentanyl; and (2) the defendant knew that it was fentanyl
26 or some other federally controlled substance.  "Distributing" means
27 delivering or transferring possession of fentanyl to another person,
28 with or without any financial interest in that transaction.  The

                                    4

1  government is not required to prove the amount or quantity of
2  fentanyl.  It need only prove beyond a reasonable doubt that there
3  was a measurable or detectable amount of fentanyl.
4      5.    Defendant understands that for defendant to be subject to
5  the statutory maximum sentence set forth below, the government must
6  prove beyond a reasonable doubt that defendant distributed a mixture
7  or substance containing a detectable amount of fentanyl, as described
8  in Count Two of the indictment.  Defendant admits that defendant, in
9  fact, distributed a mixture or substance containing a detectable
10 amount of fentanyl, as described in Count Two of the indictment.

PENALTIES

12     6.    Defendant understands that the statutory maximum sentence
13 that the Court can impose for a violation of Title 21, United States
14 Code, Section 841(a)(1), (b)(1)(C), is: 20 years imprisonment; a
15 lifetime period of supervised release; a fine of $1,000,000 or twice
16 the gross gain or gross loss resulting from the offense, whichever is
17 greatest; and a mandatory special assessment of $100.
18     7.    Defendant understands that the statutory mandatory minimum
19 sentence that the Court must impose for a violation of Title 21,
20 United States Code, Section 841(a)(1), (b)(1)(C) is: a three-year
21 period of supervised release, and a mandatory special assessment of
22 $100.
23     8.    Defendant understands that supervised release is a period
24 of time following imprisonment during which defendant will be subject
25 to various restrictions and requirements.  Defendant understands that
26 if defendant violates one or more of the conditions of any supervised
27 release imposed, defendant may be returned to prison for all or part
28 of the term of supervised release authorized by statute for the

offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.   Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

11.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future.

6

Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

12.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 14 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

On or about January 13, 2019, defendant knowingly and intentionally attempted to distribute to K.G. and A.A. N-phenyl-N-[1-(2-phenylethy)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

On January 31, 2019, in Los Angeles County, within the Central District of California, defendant knowingly and intentionally distributed to another person fentanyl, a Schedule II narcotic drug controlled substance.

Specifically, on or about January 8, 2019, defendant posted an ad on Craigslist (the "Craigslist ad") using coded language to sell oxycodone pills, and provided his cell phone number ending in x7939 for potential buyers.  According to records obtained from Craigslist, the Craigslist ad was created by an individual with an email of "nicktulloss@[XXXX].com" and a phone number ending in x7939. Specifically, the Craigslist ad was titled "Blue Roxy Clothes 30M" and read, "Hey I have some new Roxy clothes with tags.  New clothes size 30 on the tag.  These shirts are 20$ each.  Size M30.  Thanks for looking."  "Roxy" is coded language for Oxycodone, OxyContin, and/or Roxicodone pills and "M30" refers to the imprint that Oxycodone pills have on them.

On January 13, 2019, at 12:38 p.m. K.G. sent a text message to the x7939 number stating, "Hey, is this Nick? I found you on Craigslist."  Defendant responded using the x7939 number and negotiated the sale of narcotics to K.G.  K.G. texted, "I wanted to get some oxy," referring to oxycodone a federally controlled substance.  Using coded language to arrange the sale, defendant responded, "I have a couple of blue shirts left / Pickup in Santa Clarita."  K.G. asked, "Can I possibly get 20 blue shirts."  At 12:47 p.m. defendant responded by asking K.G. to "Facetime me / Facetime me."  At 1:05 p.m. defendant texted, "Ok/ You have to eat a piece in front of me before sale.  Just a small one," provided an address to meet in Castaic, CA, and added, "These shirts are 20 e," meaning that the purported oxycodone pills were $20 each.  A few minutes later, defendant inquired, "How does that look to you?"  K.G. responded, "I mean yeah like I said I sniff and smoke them / Price is fine thanks / which ones do you have."  Defendant responded, "M 30."  Defendant and

1   K.G. continued to send messages regarding the timing and logistics of
2   meeting.  At 1:59 p.m. defendant texted K.G., "Are you here."  K.G.
3   responded: "Yes."

4      Later that day, on January 13, 2019, K.G. was found dead of a
5   fentanyl overdoes inside of a car parked at Magic Mountain Parkway in
6   Saugus, California.  When law enforcement officers arrived on the
7   scene, they spoke with witnesses A.A. and J.H.  A.A. and J.H. were
8   also subsequently interviewed by law enforcement.  Defendant was
9   identified as the source of supply for the oxycodone pills that
10  contained fentanyl.  A.A. told law enforcement that when they met
11  with defendant to purchase the pills, they robbed him of the pills
12  rather than purchasing them from him.

13     According to A.A. and J.H., on January 13, 2019, K.G. drove an
14  SUV with A.A. as the passenger, and K.G. picked up J.H., who was in
15  the backseat of the SUV.  A.A., J.H., and K.G. obtained the pills
16  from defendant.  As A.A. reported to officers, once K.G. picked up
17  J.H., the two decided to go to a Castaic neighborhood to pick up
18  oxycodone pills.  A.A. further told officers that J.H. smoked one of
19  the pills, while she and K.G. split a pill and snorted it.  A piece
20  of tin foil with burn marks was found approximately two to three feet
21  from the car in which K.G. was found.  The tin foil was subsequently
22  submitted for analysis and was found to contain a net weight of
23  0.0271 gram+/-0.0018 gram of a solid substance containing fentanyl.

24     At a March 2019 interview, defendant admitted to law enforcement
25  that he knowingly and intentionally attempted to distribute the
26  purported oxycodone pills, which contained fentanyl, to A.A. and K.G.
27  Defendant admitted that on January 13, 2018, he set up a sale of the
28  pills with A.A. and K.G. and video-chatted with the two women through

the FaceTime app to make sure the purchase was legitimate.  Defendant provided A.A. and K.G. with a location down the street from his house at which to meet.  Upon meeting with A.A. and K.G., defendant asked to see the money while the women asked to see the pills.  Defendant entered the SUV driven by K.G. through the rear passenger seat on the driver's side.  Once in the car, J.H. appeared from the third-row passenger seating area directly behind defendant.  J.H. grabbed defendant from behind and demanded that defendant drop the pills, which he did.  Defendant had 25 pills with him, which he had intended to sell to the women at a price of $20 per pill.  Although defendant never saw J.H.'s face, he knew it was J.H. from his voice based on defendant's previous interactions with J.H.

On January 31, 2019, defendant again knowingly and intentionally distributed fentanyl, a Schedule II narcotic drug-controlled substance, which he represented to be oxycodone pills.  On January 24, 2019, an undercover detective with the Los Angeles County Sherriff's Department initiated a text conversation with defendant at the number listed on the Craigslist ad, posing as a narcotics purchaser.  Over the next few days, the detective communicated with defendant using coded language regarding the advertised oxycodone pills, the price, which was set at $20 per pill, and the quantity of pills for purchase, which was set at ten pills.  For instance, on January 24, 2019, the undercover detective texted defendant that he saw the "ad on craigslist" and "was wanting to get some shirts for me and my friends" on either January 30, 2019 or January 31, 2019. Defendant responded to text him at a later date and that he "may have some but I'm not sure."  On January 29, 2019, the undercover detective texted defendant that his "best window for time is thursday

1  morning or afternoon… does that work for you?"  The undercover
2  detective then used similar coded language as K.G. used and asked
3  whether defendant could "do anything on [the] price" if he bought
4  "15-20 shirts" from defendant.  Defendant responded that he does not
5  "sell more then 10 for first time customer."  The undercover
6  detective then confirmed the price asking, "So 200 for the 10 right?"
7  Defendant responded "Yes. 20 e."  On January 31, 2019, the undercover
8  detective and defendant arranged to meet at a mall food court in
9  Valencia, California that morning.

10      Later in the morning of January 31, 2019, two undercover
11  detectives, including the detective who had been in communication
12  with defendant, arrived at the meeting location at the agreed-upon
13  approximate meeting time.  Over text communication, one of the
14  detectives described to defendant what they were wearing.  The
15  detectives waited at the entrance to the mall food court for
16  defendant to make contact.  Defendant approached them and handed one
17  of the detectives a packet of gum, which contained a small red
18  transparent zip top baggie with multiple pills marked "M-30," which
19  is consistent with oxycodone pills.  The undercover detective then
20  handed defendant $200, and asked defendant if it were possible to
21  purchase pills in the future.  Defendant answered in the affirmative.
22  One of the ten pills was subsequently tested by the Los Angeles
23  Sherriff's Department Crime Lab, which lab found the pill contained
24  fentanyl.

25      In February 2019, defendant continued to post advertisements on
26  Craigslist to sell "Blue Roxy 30M/M30."  In March 2019, law
27  enforcement searched defendant's residence.  In defendant's room, law
28  enforcement officers found a black notebook that had "Nick"

1  handwritten at the top and included handwritten notes, names, numbers

2  and dollar amounts consistent with a pay/owe sheet and drug

3  paraphernalia.

4      During a March 2019 interview with law enforcement officers,

5  defendant admitted he knew he had sold pressed or "fake" pills that

6  contained fentanyl to the undercover officers.   Law enforcement

7  officers also uncovered a text message on defendant's phone

8  referencing "pressed" and "fent" pills.

9                          SENTENCING FACTORS

10     13.   Defendant understands that in determining defendant's

11  sentence the Court is required to calculate the applicable Sentencing

12  Guidelines range and to consider that range, possible departures

13  under the Sentencing Guidelines, and the other sentencing factors set

14  forth in 18 U.S.C. § 3553(a).   Defendant understands that the

15  Sentencing Guidelines are advisory only, that defendant cannot have

16  any expectation of receiving a sentence within the calculated

17  Sentencing Guidelines range, and that after considering the

18  Sentencing Guidelines and the other § 3553(a) factors, the Court will

19  be free to exercise its discretion to impose any sentence it finds

20  appropriate up to the maximum set by statute for the crime of

21  conviction.

22     14.   Defendant and the USAO agree to the following applicable

23  Sentencing Guidelines factors:

24  Base Offense Level:              6       U.S.S.G. § 2D1.1(a)(5) &
                                             2D1.1(c)(17)
25

26  Use of an Interactive
27  Computer Service:               +2       U.S.S.G. § 2D1.1(b)(7)

28

| | | |
|---|---|---|
| Marketing or Misrepresentation of a Substance Containing Fentanyl: | +4 | U.S.S.G. § 2D1.1(b)(13) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

15.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

16.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

17.  Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.  The right to persist in a plea of not guilty.

      b.  The right to a speedy and public trial by jury.

      c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

1      d.   The right to be presumed innocent and to have the

2  burden of proof placed on the government to prove defendant guilty

3  beyond a reasonable doubt.

4      e.   The right to confront and cross-examine witnesses

5  against defendant.

6      f.   The right to testify and to present evidence in

7  opposition to the charges, including the right to compel the

8  attendance of witnesses to testify.

9      g.   The right not to be compelled to testify, and, if

10  defendant chose not to testify or present evidence, to have that

11  choice not be used against defendant.

12      h.   Any and all rights to pursue any affirmative defenses,

13  Fourth Amendment or Fifth Amendment claims, and other pretrial

14  motions that have been filed or could be filed.

15      i.   Understanding that the government has in its

16  possession digital devices and/or digital media seized from

17  defendant, defendant waives any right to the return of digital data

18  contained on those digital devices and/or digital media and agrees

19  that if any of these digital devices and/or digital media are

20  returned to defendant, the government may delete all digital data

21  from those digital devices and/or digital media before they are

22  returned to defendant.

23                    WAIVER OF APPEAL OF CONVICTION

24      18.  Defendant understands that, with the exception of an appeal

25  based on a claim that defendant's guilty plea was involuntary, by

26  pleading guilty defendant is waiving and giving up any right to

27  appeal defendant's conviction on the offense to which defendant is

28  pleading guilty.  Defendant understands that this waiver includes,

but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

19.   Defendant agrees that, provided the Court imposes a total term of imprisonment within or below the range corresponding to an offense level of 10 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

1   Defendant understands that this waiver includes, but is not limited

2   to, arguments that the statute to which defendant is pleading guilty

3   is unconstitutional, and any and all claims that the statement of

4   facts provided herein is insufficient to support defendant's plea of

5   guilty.

6       21.   The USAO agrees that, provided (a) all portions of the

7   sentence are at or below the statutory maximum specified above and

8   (b) the Court imposes a term of imprisonment within or above the

9   range corresponding to an offense level of 10 and the criminal

10  history category calculated by the Court, the USAO gives up its right

11  to appeal any portion of the sentence.

12                    RESULT OF WITHDRAWAL OF GUILTY PLEA

13      22.   Defendant agrees that if, after entering a guilty plea

14  pursuant to this agreement, defendant seeks to withdraw and succeeds

15  in withdrawing defendant's guilty plea on any basis other than a

16  claim and finding that entry into this plea agreement was

17  involuntary, then the USAO will be relieved of all of its obligations

18  under this agreement.

19              RESULT OF VACATUR, REVERSAL OR SET-ASIDE

20      23.   Defendant agrees that if the count of conviction is

21  vacated, reversed, or set aside, both the USAO and defendant will be

22  released from all their obligations under this agreement.

23                    EFFECTIVE DATE OF AGREEMENT

24      24.   This agreement is effective upon signature and execution of

25  all required certifications by defendant, defendant's counsel, and an

26  Assistant United States Attorney.

27

28

## BREACH OF AGREEMENT

25.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

26.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the

1   Court's Sentencing Guidelines calculations and the sentence it
2   chooses to impose are not error, although each party agrees to
3   maintain its view that the calculations in paragraph 14 are
4   consistent with the facts of this case.  While this paragraph permits
5   both the USAO and defendant to submit full and complete factual
6   information to the United States Probation and Pretrial Services
7   Office and the Court, even if that factual information may be viewed
8   as inconsistent with the facts agreed to in this agreement, this
9   paragraph does not affect defendant's and the USAO's obligations not
10  to contest the facts agreed to in this agreement.

11      28.  Defendant understands that even if the Court ignores any
12  sentencing recommendation, finds facts or reaches conclusions
13  different from those agreed to, and/or imposes any sentence up to the
14  maximum established by statute, defendant cannot, for that reason,
15  withdraw defendant's guilty plea, and defendant will remain bound to
16  fulfill all defendant's obligations under this agreement.  Defendant
17  understands that no one -- not the prosecutor, defendant's attorney,
18  or the Court -- can make a binding prediction or promise regarding
19  the sentence defendant will receive, except that it will be within
20  the statutory maximum.

21                      NO ADDITIONAL AGREEMENTS

22      29.  Defendant understands that, except as set forth herein,
23  there are no promises, understandings, or agreements between the USAO
24  and defendant or defendant's attorney, and that no additional
25  promise, understanding, or agreement may be entered into unless in a
26  writing signed by all parties or on the record in court.

27

28

18

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

30. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

_____          05/12/2021
DOMINIQUE CAAMANO                         _____
Assistant United States Attorney          Date

_____          5/12/21
NICHOLAS TULLOS                           _____
Defendant                                 Date

_____          5/12/21
JILL GINSTLING                            _____
Attorney for Defendant                    Date
NICHOLAS TULLOS


CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences

of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          5/12/21
NICHOLAS TULLOS                           Date
Defendant

### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am NICHOLAS TULLOS's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set

//
//

forth in this agreement is sufficient to support my client's entry of
a guilty plea pursuant to this agreement.

_____                    5/12/21
JILL GINSTLING                                 Date
Attorney for Defendant
NICHOLAS TULLOS

21